UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00443-TBR

**MARY PATRICIA DICK and GARY L.**
**EKERS, for themselves and all others**
**similarly situated,**                                                        **Plaintiffs,**

**v.**

**SPRINT COMMUNICATIONS COMPANY**
**L.P. and QWEST COMMUNICATIONS**
**COMPANY, LLC,**                                                              **Defendants.**

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the Joint Motion for Final Approval of Class-Action Settlement and Motion for Attorney Fees and Expenses to Settlement Class Counsel and Incentive Awards to Class Representatives. (Docket No. 31.) The Court has reviewed the motions and has considered all relevant objections filed with the Court. In addition, on June 18, 2013, the Court conducted a Fairness Hearing on the proposed settlement.

Pursuant to Fed. R. Civ. P. 23(e), and for the reasons set forth below, the Court finds that Class Counsel provided notice of the settlement to all potential Class Members in a reasonable manner; that the objections lack merit; and the Settlement Agreement is fair, reasonable, and adequate; and that the plan of allocation is fair.

## BACKGROUND

The named Plaintiffs in this matter, Mary Patricia Dick and Gary L. Ekers, assert that the Defendant telecommunications companies buried fiber-optic cable and installed related equipment within railroad rights of way upon land owned by themselves or other class members. The Defendants are Sprint Communications Company LP ("Sprint") and Qwest Communications

Company, LLC ("Qwest"). According to Plaintiffs, Defendants neither sought their permission nor paid them compensation for such use. (Docket No. 1 at 2.) Dick and Ekers filed this action in their individual capacity and on behalf of all others similarly situated.

The parties entered into a Kentucky Class Settlement Agreement ("the Settlement Agreement") as of November 15, 2012.[1] They then filed a joint motion, pursuant to Fed. R. Civ. P. 23(b) and (e), to certify the settlement class, preliminarily approve the Kentucky settlement agreement, and approve the manner of notice to the class. (Docket No. 21.)

The Settlement Agreement commits the Defendants to pay up to $1,457,000 in cash compensation, $565,000 in attorneys' fees and expenses, and approximately $337,000 toward an allocated share of administrative costs. To receive compensation, Class Members must: (1) submit a claim form and copy of a deed or certificate of title for their property; (2) execute a release of claims form; and (3) execute a telecommunications system easement deed. The compensation to be paid is determined for each Class Member's property at the rate of $0.64 per linear foot. Compensation is also allocated between Class Members who have owned the same property at different times in proportion to the length of each Class Member's period of ownership.

The Settlement Agreement further provides that the Claims Administrator, Rust Consulting, Inc., will determine an initial deposit amount that each Defendant must make into the Settlement Account and that the Claims Administrator will thereafter direct each Defendant to provide sufficient ongoing funding of the settlement account to pay out qualifying claims. The difference between any amount contributed to the Settlement Account and the total paid out

---

[1] For purposes of the discussion contained in this Memorandum Opinion, when terms are used that are expressly defined in the Settlement Agreement, they are intended to have the meanings ascribed to them in the Settlement Agreement.

on Class Members' claims is to be refunded to that Defendant. The Settlement Agreement also provides for an incentive award of $1,300 to each of the two named Class Representatives to compensate them for their services.

In its order of December 21, 2012 ("the Preliminary Approval Order"), the Court preliminarily approved the Settlement Agreement per the parties' motion (Docket No. 21) pursuant to Fed. R. Civ. P. 23(b) and (e). The Court certified this matter as a class action for settlement purposes on behalf of the following class:

> [A] class under the Settlement Agreement (the "Settlement Class"), defined as follows:
>
> a class comprising all Persons who own or who claim to own, for any period of time during a Compensation Period, any Covered Property, *provided*, that "Settlement Class" or "Class" does not include: (1) Right-of-Way Providers and their predecessors, successors, parents, subsidiaries, and affiliates, past or present; (2) federal, state, and local government entities; (3) Native American nations and tribes; or (4) any Person who files a valid and timely exclusion on or before the Opt-Out Deadline.

(Docket No. 28 at 2.)

The Court preliminarily approved the Kentucky Settlement Agreement, designated Mary Patricia Dick and Gary L. Ekers as Class Representatives, and appointed various Class Counsel and a Claims Administrator. Finally, the Court reviewed forms of notice submitted by the parties, approved their form, and approved the parties' plan for directing notice to the class members. The Court found that the proposed plan provided the best notice practicable under the circumstances and satisfied both Rule 23 and the requirements of due process. (Docket No. 28.)

On June 18, 2013, the Court held a hearing to determine whether the Settlement Agreement was fair, reasonable, and adequate and in the best interests of the Class ("the Fairness

Hearing"). Prior to the Court's final fairness hearing in on June 18, 2013, Douglas J. Grothaus, one of 6,537 Class Members who received Court Notice, objected to the proposed class action settlement and the award of attorneys' fees. (Docket No. 30.) Mr. Grothaus has also responded to the Plaintiffs' memorandum in support of their motions for approval. (Docket No. 36.)

The Court has now heard the statements of counsel for the Parties and of such persons as chose to appear at the Fairness Hearing. The Court has also considered the files, records, and proceedings in the Action, the benefits to the Class under the Settlement Agreement, the risks complexity, expense, and probable duration of further litigation, and the objection of Mr. Grothaus. This matter is now ripe for adjudication.

## OBJECTIONS

Mr. Grothaus's objections to the Settlement have been timely filed with the Court and fall into eight general categories:

(1) Objection to the method of payment to current landowners. Mr. Grothaus primarily takes issue with the fact that the settlement does not provide direct, automatic payments to Class Members, instead requiring them to submit claim forms and other documentation in order to receive compensation. (Docket No. 30 at 3-10.)

(2) Objection to the claims procedure, which requires final approval before the claims process begins. Mr. Grothaus reasons that because the response rate for Class Members cannot be determined until after the settlement is approved, the Court cannot adequately assess the Settlement's fairness. (Docket No. 30 at 7-8.)

(3) Objection to the Settlement's required conveyance pursuant to Fed. R. Civ. P. 70. Mr. Grothaus argues that Fed. R. Civ. P. 70 does not provide authority to direct Class

Members to grant property rights in the manner contemplated by the Settlement Agreement. (Docket No. 30 at 8-10.)

(4) Allegation that the Class Notice failed to use plain language and did not inform Class Members that unless they submit the requisite documents, they will grant the Settling Defendants a perpetual telecommunications easement in the railroad right of way. (Docket No. 30 at 10-11.)

(5)  Complaints as to the adequacy of compensation to be paid to Class Members.  (Docket No. 30 at 11-13.)

(6) Allegation that the Settlement Agreement unfairly reduces the Current Landowner's compensation benefit.  (Docket No. 30 at 13.)

(7) Objection to the provision requiring Class Members to release their claims against parties who did not contribute to the Settlement.  (Docket No. 30 at 14.)

(8) Objection to the requested attorney fee award.  (Docket No. 30 at 14.)

Noting that "[o]nce preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objective class member must overcome a heavy burden to prove that the settlement is unreasonable," *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)), the Court will address each of the objections in turn.

### 1.  Objection to the method of payment to individual landowners.

As discussed above, the Settlement Agreement requires all class members to complete, sign, and submit a claim form to the Claims Administrator.  (Settlement § X.A.2; *see* Ex. 1, Tab G (claim form).)  Class members must also provide a deed or certificate of title that demonstrates that they own land adjacent to a right of way and that includes the land's legal description.

(Settlement § II.B.1.)  Class members who own property adjacent to covered rights of way and submit a qualified claim will receive $0.64 per foot.  (*See* Settlement Definition of "Kentucky Benefits.")

Mr. Grothaus alleges that because the Current Landowners of the properties in question can be identified for purposes of Class Notice, a Claim Form should not be required in order to receive benefits.  (Docket No. 30 at 3.)  Rather, he urges the Court to require direct notice to each of the Current Landowners.  (Docket No. 30 at 3.)  Further, Mr. Grothaus contends that automatic payments are warranted, as all Class Members who do not opt out will be burdened with a compulsory easement.  (Docket No. 30 at 4.)  He alleges that requiring such paperwork serves only to deter potential Class Members who would otherwise benefit from the common recovery. (Docket No. 30 at 5.)

The Court declines to accept Mr. Grothaus's argument.  Courts often uphold claims forms such as the one utilized here; it is certainly proper to require class members to submit information demonstrating that they are entitled to the relief at issue.   In class action settlements, "[c]lass members must usually file claim forms providing details about their claims and other information needed to administer the settlement."  *Manual for Complex Litig.* § 21.66 (4th ed. 2012).  The claims process before the Court is not an unusual one.

### 2.  Objection to the claims procedure.

Next, Mr. Grothaus objects to the settlement provision that requires the Court's final approval before the claims process begins.  This, he reasons, prevents the Court from assessing the fairness of the Settlement because the response rate of Class Members cannot be determined until after the Settlement is finally approved.  (Docket No. 30 at 7.)

However, Mr. Grothaus points to no cases that require a court to consider the claims rate before assessing whether a settlement is fair, reasonable, and adequate. Rather, the courts cited by Mr. Grothaus considered all available information regarding the reaction of absent class members. *See In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2012 WL 2236692 (E.D. Tenn. June 15, 2012); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011); *Wade v. Kroger Co.*, No. 3:01-CV-699-R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008). Here, of course, claims response data is unavailable. However, the Court has gauged the response of class members by considering the small number of opt-outs and objections. The Court concludes that this factor casts no doubt on the settlement's adequacy.

### 3. Objection to the settlement's required conveyance under Fed. R. Civ. P. 70.

In an effort to assure that any future claims against the Defendants are resolved, the Settlement causes all Current Landowners on whose property the Defendants have installed telecommunications facilities to convey an easement to the Defendants. The Settlement permits Defendants to record the easements, providing notice to subsequent purchasers. The Court's final approval order will also cause the Claims Administrator to convey an easement to the Settling Defendants on behalf of Class Members who do not execute deeds or file a claim. (Settlement § VIII.A.I.(i); *see* Ex. 1, Tab I (Claims Administrator easement deed).) The Court will also enter an easement deed that the Settling Defendants or Class Counsel may record. (Settlement § VIII.A.1.(k); *see* Ex. 1, Tab K (easement deed by court order).) These easements grant the Settling Defendants a perpetual easement in the right-of-way property for the presence of the telecommunications equipment at issue. (*See* Ex. 1, Tab H at 1-2.)

Mr. Grothaus argues that Fed. R. Civ. P. 70 does not authorize the granting of property rights when doing so would be the effective equivalent of entering a judgment against every class

member who does not opt out. Mr. Grothaus argues that these Orders would effectively enforce the judgment *against* Class Members who choose not to convey the deed in easement to the Settling Defendants, transforming the Class Members themselves into Defendants. (Docket No. 30 at 9.)

Rule 70 of the Federal Rules of Civil Procedure provides:

> If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court. When done, the act has the same effect as if done by the party.

Fed. R. Civ. P. 70(a).

Mr. Grothaus contends that Rule 70 of the Federal Rules of Civil Procedure allows a writ of attachment against the property of only noncompliant parties and is operative only after a judgment is entered against such a party. (Docket No. 30 at 9.) The instant case, he argues, is neither. Instead, the conveyance contemplated by the KSA is "essentially a condemnation of a right of way against Class Members." (Docket No. 30 at 9.)

The Court notes that this matter was addressed in its Order Certifying Settlement Class, Preliminarily Approving Class-Action Settlement, and Approving Form and Manner of Notice. Moreover, the Court finds that it has the authority under Federal Rule of Civil Procedure 70 and as provided in the Settlement Agreement to direct all Class Members who own a current interest in a Qualifying Parcel and who have not requested exclusion from a Settlement Class, regardless of whether they file a Claim Form for Landowner Benefits, to grant a Claims Administrator Telecommunications Cable System Easement Deed to the Settling Defendants, as provided in the Settlement Agreement. (Docket No. 28 at 6.) Rule 70 authorizes the appointment of a proxy for any "party" that fails to perform a specific act mandated by the court, regardless of whether or

not that party is a defendant.  This conclusion accords with that of courts in other fiber optic right-of-way class action lawsuits, in which defendants have obtained easements from landowners who choose not to opt out.  *See, e.g.*, *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978 (7th Cir. 2002); *Barkema v. Williams Pipeline Co.*, 666 N.W.2d 612 (Iowa 2003). Accordingly, the Court rejects Mr. Grothaus's objection.

### 4.  Allegation that the Class Notice was inadequate.

Fourth, Mr. Grothaus argues that the class notice fails to inform the class members that unless they opt out, they will give the Defendants a perpetual telecommunications easement in the railroad right of way.  (Docket No. 30 at 10.)  Furthermore, Mr. Grothaus contends that the Class Notice fails to use plain language, arguing that its "eight pages of single space type" is designed to "overwhelm and confuse the average Class Member," effectively dissuading them from reading it.  (Docket No. 30 at 10.)

The Court affirms its conclusion that the form, content, and method of publicizing notice to the class members, including both published notice and individual notices to identified class members, were adequate and reasonable, constituting the best notice practicable under the circumstances.  Accordingly, the notice satisfied the requirements of Rule 23(c)(2)(B).

Because a class action under Rule 23 has res judicata effect on all members of the class, due process demands that notice of a proposed settlement be given to the class.  This notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *UAW v. General Motors Corp.*, 2006 WL 891151 at *33 (E.D.Mich., Mar. 31, 2006, No. 05-CV-73991-DT) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177

F.R.D. 216, 231 (D.N.J. 1997)).  Moreover, the notice must reasonably convey the required information and allow a reasonable time for interested parties to make their appearance.  Finally, the notice must fairly apprise the prospective class members of the proposed settlement's terms, as well as the options available to them.

The class notice program at issue included four parts:  (1) long-form notice through direct mailings to known class members, (2) broad, summary notice through paid media in national consumer magazines and newspaper supplements, (3) notice through a national earned-media campaign, and (4) electronic notice through a dedicated website.  (Docket No. 21-52 at 3.)  A call center was also established to answer class members' questions. Class members were identified using Data Mapping Solutions, which identified current and former owners of the affected properties using tax rolls and real estate records.  Summary notice was published in several national publications and in two national newspaper inserts in twenty-six local Kentucky publications.  Kinsella Media estimates that approximately 58% of all Kentucky class members received the long-form notice via direct mail and that approximately 87% of all Kentucky homeowners were reached by the four-part notice program.  (Docket No. 21-52 at 6.)

Moreover, the Court finds that the notice at issue adequately disclosed all material elements of the settlement, including the easement.  The direct notice form advises that recipients' legal rights will be affected whether or not they take action and explains that the settlement will provide the Defendants with "certain telecommunications easement rights of way."  (Ex. 4:  Mailed Notice at 1.)  These principles are reiterated throughout the direct notice form.  (*See, e.g.*, Question 5, Ex. 4 at 3 ("[U]nder the Settlement, Class Members give the Defendants an Easement in the railroad right of way.  An easement permits a person to use

property for a stated purpose. The Easement given through the Settlement will be for Telecommunications Facilities and is described more fully in Question 17.").)

Finally, the Court finds that the notice used simple, readily understandable language to describe the options available to Class Members. Furthermore, this information was presented in a well-organized fashion, including a table of contents and addressing in question-and-answer format a total of thirty-one typical queries. (*See* Ex. 4: Mailed Notice at 2 (listing the categories of the table of contents, including "The Claims Process," "Excluding Yourself from the Settlement," "Objecting to the Settlement," and "If You Do Nothing.")

In sum, the notice in the case at bar is adequate under Fed. R. Civ. P. 23 and the standards of due process. It was directed in a reasonable manner to all prospective class members who would be bound by the Settlement Agreement. Moreover, it fairly apprised the prospective class members of the terms of the proposed Settlement Agreement and their options with respect to their decision whether to join the class.

**5. Complaints as to the adequacy of compensation.**

Mr. Grothaus maintains that the Settlement provides Class Members with inadequate compensation. Mr. Grothaus contests the reasonableness of the Settlement's benefit of $0.64 per linear foot, referencing a 2002 report by the National Oceanic and Atmospheric Administration indicating that the fair market value of a telecommunications easement was approximately $7.58 to $18.94 per linear foot. (Docket No. 30 at 13.) Furthermore, benefits to the Kentucky class are lower than those obtained in comparable settlements. *See, e.g.*, *Uhl*, 2001 WL 987840 (settling a fifteen-state class at base compensation level of $1.14 per foot, plus non-cash compensation).

However, the Court must weigh "the plaintiff's likely success on the merits against the amount and form of relief offered in the settlement" in determining the adequacy of benefits under a class settlement. *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). The report relied upon by Mr. Grothaus does not address the fact that Kentucky law affords Class Members with no easement rights in the rights of way to sell, rendering the Plaintiffs' likelihood of success on the merits attenuated, at best. *See Kentucky & West Virginia Power Co. v. Crawford*, 16 S.W.2d 1041, 1042 (Ky. Ct. App. 1929) ("[I]n this jurisdiction we are committed to the rule that telephone and telegraph liens are not additional burdens upon the fee in the right of way of a public highway, upon the theory that the easement acquired by the public includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities which the advance of civilization may render suitable for a highway."); *see also Cumberland Tel. & Tel. v. Avritt*, 85 S.W. 204, 205 (Ky. Ct. App. 1905) (holding that a telephone line is within the scope of a private turnpike easement because "a telephone line along a country road is no more an additional servitude than a telephone line along a railroad right-of-way."). Moreover, Kentucky's per-foot compensation falls within the range of settlements approved by other courts, which range from $0.21 per foot to $2.28 per foot. (Docket No. 21-1 at 28-29.)

Having weighed the likelihood of Plaintiffs' success in the absence of the settlement, the Court finds the agreed-upon figure to be appropriate.

## 6. Allegation that the Settlement Agreement unfairly reduces the Current Landowner's compensation benefit.

The Settlement Agreement provides that a qualified claimant who has owned the property adjoining the rights of way throughout the entire compensation period will receive the entire

amount of benefits attributable to the right of way. (Settlement § II.C.2.) If prior owners are also entitled to benefits, such benefits will be allocated pro rata based on the prior and current owners' respective periods of ownership. (Settlement § II.C.2.)

Mr. Grothaus notes that benefits are allocated between Class Members who have owned the same parcel at different times during the Compensation Period in proportion to the length of their period of ownership. He argues that consequently, the settlement unfairly reduces the compensation benefit to the current landowner.

The Court disagrees. Mr. Grothaus's argument that "[s]ince the prior landowner probably did not receive mailed notice, there is a very low likelihood of any claim being made by prior landowners" is unsupported. Compilation of the Database Identification Information began in 2003, allowing many prior owners to receive direct, mailed notice of the Settlement. Moreover, because a Current Landowner who did not own Covered Property when the Telecommunications Facilities were installed would lack standing to sue for that installation, the arrangement before the Court is arguably favorable to Current Landowners. *See Kentucky West Virginia Gas Co. v. Matny*, 279 S.W.2d 805, 806-07 (Ky. Ct. App. 1955). Therefore, this objection is inapposite.

**7. Objection to the required release of claims against railroad companies.**

Class members who do not opt out will release each Settling Defendant that owns telecommunications facilities in a railroad right of way adjacent to the class member's property. (Settlement § IV.B.1; *see* Ex. 1, Tabs J (current landowner release) and J(1) (prior landowner release).) Released parties include the Settling Defendants, any person using the telecommunications facility of a Settling Defendant, and the railroad companies. (Settlement

Definitions (defining "Released Parties"); *see* Ex. 1, Tab L (list of released Kentucky right of way providers).)

Although Mr. Grothaus's objects to such a release, his concerns do not preclude approval of the settlement. Courts frequently approve Rule 23(b)(3) class actions settlements that include releases of parents and other non-parties. Here, the parties' objective was to achieve finality to this action. Defendants assert that they would consider settlement only if it foreclosed the possibility of indemnification claims and other forms of re-litigation. (Docket No. 32 at 22.) Such an arrangement is not atypical and does not render the Settlement Agreement unreasonable or unfair.

**8. Objection to the requested attorney fee award.**

In administering a certified class action, Fed. R. Civ. P. 23(h) authorizes the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Upon granting such a motion, the Court must find the facts and state its legal conclusions. Fed. R. Civ. P. 23(h)(3). The Rule further provides that a claim for an award must be made by motion under Rule 54(d)(2) and that notice must be directed to class members in a reasonable manner. Fed. R. Civ. P. 23(h)(1). Rule 54(d)(2) requires those claiming attorneys fees to timely file a motion specifying the grounds entitling the movant to the award and stating the amount sought.

Having provided the requisite notice and timely filed an appropriate motion, Plaintiffs seek attorneys' fees and expenses of $565,000.00. The Settling Defendants do not object to this sum. (*See* Settlement Agreement § III.E.1.) Mr. Grothaus notes that Class Counsel have not demonstrated that these fees were earned as a result of their efforts in the Kentucky settlement.

The Court finds that the record before it adequately supports the requested award and will further discuss the issue below.

## SETTLEMENT AGREEMENT

Having addressed the specific objections raised, the Court must now analyze the propriety and fairness of the Settlement Agreement. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Fed. R. Civ. P. 23(e). Rule 23(e) requires the district court to act as a fiduciary, safeguarding the rights of absent class members. *See, e.g.*, *Kinder v. Northwestern Bank*, 2013 WL 1914519 at *3 (W.D. Mich., Apr. 15, 2013, No. 1:10-cv-405). Fed. R. Civ. P. 23 authorizes the Court to approve a settlement that would bind the class members only after a hearing and a determination that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). However, the "restricted, tightly focused role" that Rule 23(e) prescribes does not consign a district court with broad powers to intrude upon the private, consensual bargain negotiated by the parties. *See Kinder*, 2013 WL 1914519 at *3 (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)).

The Sixth Circuit points to seven factors that should guide the Court's inquiry as to whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).

For the following reasons, the Court further finds that the settlement agreement is fair, reasonable and adequate and is in the best interest of class members.

**A.  The risk of fraud or collusion**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 838 (E.D. Mich. 2008); *see also In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1016 (S.D. Ohio 2001) (citing Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.51 (3d ed. 1992)) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

The parties to this case have engaged in extensive motion practice, including the filing of multiple briefs on motion for class certification and in response to Mr. Grothaus's objections. Throughout the litigation, no allegation of fraud or collusion has been made against the parties.

Therefore, the Court finds that the appointed Class Representatives and their counsel fairly and adequately represented the interests of the Class Members as related to the Settlement Agreement.  Moreover, both the Class Members and the Settling Defendants benefited from their representation by experienced, competent counsel.  The Court finds that the settlement agreement resulted from good-faith, arms'-length negotiations by the Class Representatives, Settling Defendants, and the counsel of each.  The Court is satisfied that the exchange of data throughout the litigation allowed all parties to become familiar with the strengths and weaknesses of their respective positions.  Accordingly, the evidence before Court indicates no risk of collusion among counsel.

**B.  The complexity, expense, and likely duration of further litigation**

The Court must also consider the risks, expense, and delay the plaintiffs would confront if they pursued their claims and trial and through appeal. These factors are weighed against the recovery provided by the settlement. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003); *Telectronics*, 137 F.Supp.2d at 1013. The Court finds that this factor weighs in favor of finding the settlement fair and reasonable.

As discussed above, a number of the issues being litigated in this action are not clearly in the Class Members' favor under Kentucky law. A resolution of such matters would have presented a significant risk to the class, who would be subject to the continued fees and costs associated with ongoing litigation. Moreover, even were the class to succeed at trial, appeals would likely delay meaningful relief. By contrast, the Settlement provides recovery with neither exposure to the risks or delays of litigation. Therefore, the Court finds that this factor weighs in favor of settlement.

## C. The amount of discovery engaged in by the parties

The parties have engaged in extensive discovery, litigation, and appeals in a number of lawsuits for years before entering into the ultimate settlement negotiation in the case at bar. Indeed, the litigation that is the focus of the Settlement Agreement originated in the 1990s. In connection with the litigation, the parties engaged in significant discovery and investigation of this matter, including exchange of documents, depositions, and review and analysis of the proceedings, evidence, and rulings in related class actions. In total, in right-of-way litigation in state and federal courts, Plaintiffs' counsel reviewed nearly 900,000 pages of documents and participated in over three dozen depositions. (*See* Docket No. 21-1 at 27-28.)

Class Counsel has considerable experience in this area of the law, as well as in settling class actions of this sort. "Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate . . . ." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200 at *4 (W.D. Ky. Aug. 23, 2010, No. 3:08-MD- 01998) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007)). Here, Counsel brought both expertise and knowledge of their clients' cases to extensive, arms-length negotiations. Such negotiations allowed all parties to fully explore the factual and legal grounding of their positions in multiple mediation sessions. Such an exchange of information facilitated a candid perspective on the merits and risks of the parties' respective cases and allowed them to agree upon an appropriate settlement value. Accordingly, the thorough discovery exchanged by the parties points toward approval of the Settlement Agreement.

**D. Likelihood of success on the merits viewed in light of the form of relief offered in settlement**

The Court must also weigh the likelihood of success on the merits in considering whether the settlement is fair, reasonable, and adequate. "The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). As the Sixth Circuit has noted:

> The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to 'decide the merits of the case or resolve unsettled legal questions,' we cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 467 F.3d 615, 631 (6th Cir. 2007) (citations omitted).

As noted above, Class Members confront serious legal challenges that may prevent recovery were this case to proceed. Their most substantial obstacles include the fact that under Kentucky law, the owners of the fee underlying railroad right-of-way easements are not entitled to compensation when such right of ways are used for telecommunications purposes. *Cumberland Tel. & Tel. Co. v. Avritt*, 85 S.W. 204 (Ky. 1905) (holding that a telephone line upon a public highway does not give the landowner a cause of action). Moreover, Kentucky law permits telecommunications companies to contract with railroad companies for the right to construct lines within railroad right of ways. Ky. Rev. Stat. 278.540(3). The statute is silent, however, as to compensation to adjoining landowners. *See id.*

Additionally, it is unclear that Plaintiffs could demonstrate that, even if a telecommunications use is outside the scope of a railroad easement and that their claims were not time-barred, they suffered a diminution of their property's value. Kentucky law measures the damages for injury to real property based on the difference between the fair market value immediately before and immediately after the injury at issue. *See Texaco, Inc. v. Melton*, 463 S.W.2d 301, 308-09 (Ky. 1970). Therefore, Plaintiffs would bear the risk of their property being found to have sustained no diminution in value.

Finally, Kentucky law requires a claim for trespass caused by a permanent structure to be brought within five years of the structure's completion and commencement of operations. *Kentucky West Virginia Gas Co. v. Matny*, 279 S.W.2d 805, 806-07 (Ky. 1955) ("[W]here damages are caused by a permanent structure properly constructed, and not negligently operated,

a recovery must be had for the permanent nuisance once and for all, and the action must be brought within five years from the date such structure was completed and this operation commenced or from the date of the first injury, or from the date it became apparent there would be injuries resulting from the structure or its operation."). Given that Sprint's Telecommunications Facilities were installed in Kentucky in 1986 and Qwest's in 1997, the Plaintiffs would confront a statute of limitations that could bar their claim were this settlement denied.

In sum, Plaintiffs' success at trial is by no means guaranteed. The nature of the Settlement Agreement, including the monetary compensation, provides a reasonable tradeoff in exchange for the elimination of the legal risk associated with several of Plaintiffs' asserted claims. Accordingly, this factor weighs in favor of final approval of the Settlement.

### E. The opinions of experienced counsel and class representatives

The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation. *See, e.g.*, *UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

As discussed above, Class Counsel claim extensive experience in complex litigation involving similar cases before federal and state courts across a number of jurisdictions. This expertise, the meticulous discovery explained above, and the time and effort devoted to this settlement indicate that Class Counsel's opinion is entitled to great deference. Moreover, the Settlement is apparently endorsed by the Representative Plaintiffs, neither of whom have

objected to this Settlement Agreement or moved to withdraw from the litigation. This factor points toward approval of the Settlement.

### F. Reaction of absent Class Members

The Court's analysis of a proposed settlement should consider the reaction of the settlement class. "A certain number of . . . objections are to be expected in a class action . . . . If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 527 (E.D. Mich. 2003).

As noted above, the Settlement Agreement requires the Court's final approval before the claims process begins. Therefore, the Court is unable to determine the response rate of Class Members at this point. However, the majority of potential Class Members have submitted no objection to the Settlement Agreement's terms. Furthermore, the fact of Mr. Grothaus's objection does not justify abandonment of the parties' agreement. *See Leonhardt*, 581 F.Supp.2d at 840 ("[A] court should not withhold approval of a settlement merely because some class members object."). As discussed above, the Court finds that Mr. Grothaus's objections do not warrant rejection of the Settlement Agreement.

### G. The public interest

Finally, the Court finds that the settlement serves the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *accord Ehrheart v. Verizon Wireless*, No. 08-4323, 2010 WL 2365867, at *3 (3d Cir. June 15, 2010) ("Settlement agreements are to be encouraged because they promote the

amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.").  The Court finds no principled basis for not adhering to that policy in the instant case.

Furthermore, the public interest weighs in favor of providing finality.  Under the Settlement Agreement, all Current Landowners quitclaim to Defendants a Telecommunications Cable System Easement Deed ("Easement") in the Rights of Way at issue.  Upon its approval, later claims based on the same allegations will be barred, and future owners will be bound by the settlement's terms.  This assurance of finality provides the primary motivation for Defendants to settle.  (*See* Docket No. 32 at 11-13.)  The Court therefore finds that the public interest points toward approval of the Settlement.

In conclusion, the Court's analysis of these seven factors establishes that the settlement should be approved as fair, reasonable, and adequate.

### Attorneys' Fees, Costs, Expenses, and Incentive Awards

Having determined that final approval of the Settlement Agreement is warranted, the Court now considers the issue of attorneys' fees, costs, expenses, and incentive awards.  In a certified class action, the Court may award reasonable attorneys fees and non-taxable costs that are authorized by the parties' agreement.  Fed. R. Civ. P. 23(h). The Settlement Agreement permits Settlement Class Counsel to move for attorney fees and expenses in an amount not to exceed $565,000.00.[2]  They have moved for that amount pursuant to Fed. R. Civ. P. 54(d)(2), with no objection from Settling Defendants.

---

[2] *See* Settlement Agreement at I ("'Maximum Attorneys Fee Award' means $565,000.00.") and II.E ("Settlement Class Counsel may seek from the Court a cash award of fees and expenses from the Settling Defendants, in an amount not to exceed the Maximum Attorneys' Fee Award, to which the Settling Defendants will not object.")

In addressing the issue of attorneys' fees in a class action case, the Court must first determine if the lodestar or percentage approach is more appropriate.  *See, e.g.*, *In re Cardinal Health Cardinal Health Inc. v. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007).  The Court also considers six factors, collectively referred to as the *Ramey* factors:  "'(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'"  *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048 (1975).  An award of attorneys' fees must be "'reasonable under the circumstances.'" *Id.* (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

Moreover, "[a]s with attorneys fees, an award of costs and expenses, is also a matter left to the discretion of the trial court." *In Rio Hair*, 1996 WL 780512 at *19.  "[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document  productions, consulting with experts and consultants, travel, and other litigation-related expenses." *In re Cardizem*, 218 F.R.D. at 535.

## A.  The Lodestar Approach Versus the Percentage Approach

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v.* 9 F.3d at 516 (citing *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard*

*Sanitary Corp.*, 487 F.2d 161, 166-68 (3d Cir. 1973)). Courts employ two approaches in analyzing a request for attorneys' fees and determining the reasonableness of the fee. Under the "lodestar" method, the hours reasonably expended by an attorney are multiplied by a reasonable hourly rate of compensation. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). The Court may then adjust the lodestar figure based on the particulars of the case at hand. *Id.* at 471-72. Alternatively, under the "percentage of the fund" approach, the Court determines a percentage of the settlement to award the class counsel, applying several case-specific factors. *Rawlings*, 9 F.3d at 516. The Sixth Circuit has concluded that the use of either method is appropriate in common fund cases, depending on the unique circumstances of each case. *Id.* at 517. Often, the district court utilizes both methods, using each as a cross-check against the other. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F.Supp.2d 907, 923 (N.D. Ohio 2003).

Counsel argue that the agreed-upon request of $565,000.00 is reasonable as a matter of law and ask the Court to apply the percentage of the fund method. (Docket No. 31-1 at 20.) They argue that

> [B]ased on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $1,457,000 would be paid to qualifying class members. When estimated administrative costs of $337,000 — to be borne by the Settling Defendants — and the agreed-to attorneys' fees and expenses of $565,000 —also to be paid separately by the Settling Defendants — are factored in, the gross value of the Settlement is approximately $2,359,000. The $565,000 fee-and-expense award therefore represents 24 percent of the fund as a whole.

(Docket No. 31-1 at 20-21.)

Because attorneys' fees are distributed separately from the funds dedicated to the class, this case does not present a typical "common fund" situation. However, the attorneys' fees

sought here are consistent with typical payout amounts for class action settlements. *See, e.g.,*
*Fournier v. PFS Invs., Inc.*, 997 F.Supp. 828, 832 (E.D. Mich. 1998) ("The 'benchmark'
percentage for this standard has been 25% [of the common fund], with the ordinary range for
attorney's fees between 20 – 30%."). Moreover, the award of attorneys' fees in this case does
not diminish the settlement class recovery, which provides a greater benefit to the class.
Therefore, the Court accepts Counsel's estimate for purposes of establishing the settlement's
value and agrees that the attorneys' fees requested represent a reasonable fraction thereof.

In the instant case, counsel acknowledge the difficulties of calculating a lodestar figure
given the overlapping nature of similar cases across the nation and spanning over a decade.
(Docket No. 31-1 at 22-23.) Attempting to segregate Counsel's fees and expenses into a
"Kentucky-only" category would thus prove impossible. However, class counsel suggest that a
lodestar crosscheck based on the time and expense incurred in resolution of all of the state-by-
state settlements of this litigation supports Counsel's request. The Court examines the crosscheck
method in more detail under the second factor *infra.*

## B. The Six *Ramey* factors

The Court must also find that the $565,000.00 figure is reasonable by analyzing the six
factors listed above. In the Sixth Circuit, district courts generally consider the most important
factors to be the value of the benefit rendered and the value of the services on an hourly basis. *In
re Sulzer*, 268 F.Supp.2d at 923 (citing *Bowling*, 922 F.Supp. at 1280).

### 1. The Value of the Benefit Rendered to the Plaintiff Class

The first *Ramey* factor requires the Court to assess the benefit of the settlement to the
class. Courts in this circuit regard this element as the most important of the *Ramey* factors. *See
Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F.Supp. 697, 700 (S.D. Ohio 1986)

(finding that the value of the benefit rendered is listed as the first factor because it is the most important one); *Bowling*, 922 F.Supp. at 1280 ("Most important among these factors are the value of the benefit rendered to the plaintiff class and the value of Counsel's services on an hourly basis.").

Because this case does not present a common fund settlement in the traditional sense, the Court will consider the total value of the benefits rendered to the class, some of which are not easily quantified. As discussed above, the likelihood of success on the merits is unclear. In light of the Court's analysis as to the merits of the case and the risks associated with continued litigation, the Court finds the value of this Settlement is substantial. Moreover, attorneys' fees, costs, expenses, and incentive awards do not diminish class recovery, providing additional value to the class. Therefore, the Court finds that this factor supports the $565,000.00 in attorneys' fees.

### 2. The Value of the Services on an Hourly Basis

Courts adopting the percentage approach generally conduct a lodestar crosscheck to ensure that counsel does not receive a windfall. This crosscheck requires the Court to calculate the applicable lodestar multiplier and ensure that the award remains roughly aligned with the amount of work the attorneys contributed. The crosscheck does not supersede the court's inquiry into the attorneys' skill and efficiency, but serves as another method of ensuring that the fees awarded accurately reflect the work of counsel. *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 764 (S.D. Ohio 2007) (citing *Ramey*, 508 F.2d at 1196)).

"To determine the 'lodestar' figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate." *Lonardo v. Travelers Indem.*

*Co.*, No. 1:06-CV-962, 2010 WL 1416698 at \*18 (N.D. Ohio Mar. 31, 2010) (citations omitted). This figure may be adjusted according to a multiplier, which is to be decided on a case-by-case basis. *See id.*

As discussed *supra*, assessing the number of hours expended exclusively on the Kentucky Settlement proves difficult in light of the geographic and temporal scope of this litigation, Given the litigation's nationwide character, Counsel cannot present billing records relating only to work on the Kentucky case.

Although this encumbers a lodestar analysis, Counsel have summarized their fees and costs nationally in all of the state-by-state settlements of this right-of-way litigation. They indicate that attorneys' fees and expenses total over $60,000,000.00 as of March 31, 2011 and have since increased. (Docket No. 31-1 at 23.) The Settling Defendants have agreed to pay a total of $41,500,000.00 in fees and expenses in settlement nationwide. (Docket No. 31-1 at 23.) Accordingly, Class Counsel argue that the incurred fees and expenses are subject to a negative multiplier of approximately 0.70 on a nationwide basis and with a pro rata Kentucky allocation.

However, the Court is unable to calculate a lodestar based on the information before it, even on a national scale. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *B & G Min., Inc. v. Director, Office of Workers' Compensation Programs*, 522 F.3d 657, 663 (citing *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007)). In the absence of records explaining counsel's standard hourly rates and how their time was utilized in this endeavor, the Court is

unable to determine a "reasonable hourly rate." In turn, the absence of such a rate leaves the Court unable to perform a lodestar crosscheck.

The Court emphasizes that a lodestar analysis is unnecessary if the fee does not appear to be excessive as a percentage of the recovery. "It is within the district court's discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Bowling*, 102 F.3d at 779. As discussed above, the request for fees and expenses is not excessive. Moreover, although the record does not allow for a full lodestar analysis, it nonetheless demonstrates that counsel have invested much time and effort into this litigation on a national scale.

### 3. Whether the Services Were Undertaken on a Contingent Fee Basis

"[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *In re Telectronics*, 137 F.Supp.2d at 1043. Class counsel spent considerable time on this case at the risk of receiving no compensation. Therefore, this factor supports the reasonableness of the requested attorneys' fees.

### 4. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others

"Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *In re Cardizem*, 218 F.R.D. at 534. Individual plaintiffs in this case would perhaps receive only a small recovery, with some financially unable to pursue such an action on their own. Many class members might have received nothing had this settlement not been reached. "Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process" and should be rewarded for such

efforts.  *In re Rio Hair Naturalizer*, No1996 WL 780512 at *17.  The Court finds that this factor supports the award of attorneys' fees.

### 5.  The Complexity of the Litigation

As discussed *supra*, this case presents novel challenges under Kentucky law and involves a class of substantial size.  Accordingly, this factor supports the reasonableness of class counsel's requested fees.

### 6.  The Professional Skill and Standing of Counsel Involved on Both Sides

Counsel for both sides are skilled attorneys who brought extensive experience and knowledge to their motion practice, the fairness hearing, and the bargaining table. "The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."  *In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).

## C.    Incentive Awards

The Settling Defendants have agreed to pay $1,300.00 in incentive compensation each to Mary Patricia Dick and Gary L. Ekers, the Class Representatives.  (Settlement Agreement § II.D.)  "The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined the circumstances justifying incentive awards." *Lonardo*, 2010 WL 1416698 at *16 (citing *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003)). District courts in the Sixth Circuit have considered the following factors in determining whether to approve incentive awards for class representatives:

> (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class members; (2) whether the

> Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the class Representatives in pursuing the litigation.

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991).

The Court notes that no objections were made to the request for incentive rewards. In addition, the incentive rewards do not diminish class recovery and are relatively small awards. Moreover, the Settling Defendants have agreed to pay these awards. The efforts of the Representative Plaintiffs have resulted in the Class Settlement now before the Court. Therefore, the Court finds that these awards are fair, reasonable, and properly based in the benefits to the class members generated by the litigation. The Court will award the requested incentives.

## CONCLUSION

For the foregoing reasons, and pursuant to Federal Rule of Civil Procedure 23, the Court finds that the Settlement Agreement entered into by the parties is fair, reasonable, and adequate. The Court will grant Representative Plaintiffs' Motion for Final Approval and direct the payment of fees, expenses, costs, and awards by separate order consistent, and entered concurrently, with this Memorandum Opinion.